Zoning Hearing Board and Intervenor White Deer Township, both entities in Pennsylvania, in the northern part of Pennsylvania. White Deer Zoning Hearing Board lawfully, within the parameters of state law, adjudicated SELCO, I'll refer to it as either SELCO or Verizon, an application for seven variances, seeking relief from 39 to 94 percent from the standards for siting of a telecom tower on a non-conforming, already improved residential lot. The Zoning Hearing Board adjudicated that application in consideration of 100 years of common law in Pennsylvania, establishing the criteria, the considerations, the standards for the grant of relief from a Zoning Hearing Board in the form of a variance. And in the last half of that century, they adjudicated it pursuant to the current requirements in their enabling law, which is the Pennsylvania Municipalities Planning Code, which expressly provides for the Zoning Hearing Board to be the exclusive body to grant relief to the requirements and standards. And then the world changed and everybody wanted cell phones. And let me see if there are certain things we can all agree on. There was a problem with coverage on this part of I-80. Yes, there was no dispute that they have a gap in coverage that extends approximately four miles. OK. And I was interested to read in your brief, I was unaware until your brief, that the Department of Natural Resources Forest Service has really been staunchly opposed, apparently. There's a moratorium, correct, on putting such towers, monopoles in forest land, is that right? Yes. And it seemed like your real complaint was that Verizon slash Celco should have been, instead of seeking relief to put up a monopole through the zoning, local zoning of white deer, they should have been going to the Forest Service or to the Commonwealth. Is that your point? Can I address that on a couple of different points? Sure. So just to be clear, in Pennsylvania, there is no government agency exempt from local zoning if they are the owner of property and proposing to develop that property. So DCNR, as the owner of property in Pennsylvania, is subject to local zoning. There is only one agency. So that's all well and good. But if you're a company like Verizon, you want to put up a cell tower, it's fine to be able to come to the White Deer Zone Hearing Board, but you have to have a lease on a piece of land, or you have to own a piece of land, one or two. And if DCNR says, we're not going to give you a lease, we're certainly not going to sell you that plaza. So to address that issue, the Telecommunications Act does not exempt the state or its instrumentalities from the strictures of the Telecommunications Act. So they, like every other municipality in Pennsylvania, are subject to the requirement that they not interfere, materially interfere, with the provision of telecommunications services. And in the 2018 FCC declaration, which your sister appellate court, the Ninth Circuit, characterized, gave it the name, the moratoria ruling, determined that moratorium in particular were offensive to the TCA's strictures. So DCNR, being a state agency subject to the TCA, has unilaterally decided to adopt a moratorium on the improvement of DCNR-owned property for telecommunications facilities. The Township Zoning Hearing Board's first position was, we are bound by state law, common law, and statutory law, as to how we handle, how we adjudicate an application for a variance. And having, and applying that law, determined that Verizon had not met its burdens of proof and evidence in order for that board to lawfully, under Pennsylvania law, grant variances. But there's one more law, the TCA, there's one more law that you're also subject to. Secondly, the zoning hearing, the elephant in the room at all during that proceeding was that DCNR-owned property, state agency, and had imposed a moratorium. And Verizon saying to the municipality, well, even, we can disregard these properties, even though they meet our criteria for the siting of this tower. They testified that those lands owned by DCNR were equally available, and equally available in terms of meeting the needs for Verizon. But we're going to set it aside, because DCNR has announced a moratorium, which under the TCA would be a violation of the TCA. Why didn't White Deer sue DCNR? The Zoning Hearing Board is a body who is empowered by Pennsylvania only to hear the variances, not to sue any agency. I understand, but there's a township. Yeah. Why didn't they sue? We weren't placing the facility. We didn't care what DCNR did with respect to its property, except to the extent it affected the application before the board. Well, you seem to really care about the moratorium. You care greatly about the moratorium. That came through loudly and clearly in your briefing. Certainly, we care. So if the moratorium is having an adverse effect on the people of the township, why isn't Judge Fischer's question important? Why didn't the township seek relief by trying to end the moratorium? Not sure that we would have any standing to do so. And why would we take municipal resources to adjudicate an issue that isn't? We're not placing the tower. Someone else is placing the tower. We have no compulsion. And I question whether we would even have standing to do so. But the people who are placing our horizon sort of in the same position that your township is, they're saying, we can only do so much. We negotiate a lease for this parcel of land. We don't think the other parcels of land are as good as this parcel of land. And DCNR won't give us anything. Well, and I guess that's the key here, is any other developer of land in the state of Pennsylvania will have to find a way to acquire property that meets its needs. And it's great if we've got a perfect lot. It's not so easy if you have to seek variances. But the zoning, the preserved zoning regulation, the preservation of zoning regulation under the TCA has to have meaning and it has to have meaning in this way. What is zone? We have to start with that concept. What is zoning regulation? Zoning regulation is the exercise of police powers by a municipality to advance the public health, safety, morals, and welfare. It is, most importantly. So why didn't the rulings prohibit or have the effect of prohibiting? Because Verizon had options. Verizon, as the interested party in acquiring a site, had options. They sought the variances. They didn't defend. They didn't advocate sufficiently to get the variances granted under Pennsylvania law. We were bound by law to say, no, these are not being granted. They had the opportunity to exercise their financial resources to acquire the property without improvement, to acquire more than one property so as to establish it. And most importantly, to go to DCNR and say, well, you know, we would like to use your property. We would like to use your property. So you want us to say that they had to go to DCNR first? I think that they had to exercise their rights under the TCA with respect to DCNR and not come to a municipality and say, despite the fact that they're violating the TCA, you've got to accept our conclusion that this is the only site available to us that meets our needs. I'm sorry. Yes. Yes, we talked about DCNR, that elephant in the room. But again, I want to go to back. I feel like the lower court, in the opinion, jumped immediately to the limitation and ignored the basic premise preserved in the TCA by Congress, which is that there has to be an opportunity for municipalities to preserve local zoning authority. And I spoke about it being the zoning being the tool to exercise police powers. But it is informed by local land use policy. That's the executive decisions. And that policy deals with where and how development should occur throughout the township for all uses to assure that there's a proper fit for what's going on. And that's what they did. They had a zoning ordinance. They that ordinance wasn't challenged. No provision of that ordinance has been challenged. So it's the rules that apply. There is a path under the MPC to grant a variance. Five, five findings that must be made. They could not be made on record. That was made below. And the court looking at both the MPC and the decisions of the Pennsylvania court said we can't grant a variance. And it isn't on that side. But it doesn't mean we have to exercise. We have to make a decision under the limitations where they have not for us has not fully explored its options for property. In truth, Verizon said that while White Deer made the DCR argument, but the district court noted that while White Deer made the DCR written decision, it did not review that argument for this court. I think it's embedded in the challenge was to the decision of the zoning hearing board who said we can't when it doesn't meet the standards and we they have DCNR lands that are available to them. I think we we reserve that. How do you get around it says there's a decision as a fact of prohibiting personal wireless, sir. It it had the effect of saying that for this site that Verizon chose, which is a compromised site, nonconforming, already improved, requiring all of these released from the standards for the community, for that zoning district, that that they didn't do enough to determine that this was their only option. OK, so you want that to be the rule. You're only they have to be down to their option. And I appreciate that your decisions on TCA predate the declaratory orders. I appreciate that. So but having said that, the orders that the cases that you have heard on this, you look to the state standards, the body of law that informs the action before the municipality. In one case, it was a variance. In one case, it was a special exception. In another case, it was an exclusionary exclusionary zoning claim. And in you properly in those cases, one, you said there was no exclusionary zoning claim, but in the other two, you correctly said there's a violation of the TCA because the community at issue did not properly apply the standards, the framework in place for the consideration of a variance or a special exception. No question. They should those municipalities should have lost under the TCA. It was a violation. But in but I but the the TCA, the 2008 more FCC declaratory order said we still are preserving this local concept, this local zoning authority. If you if any time somebody says, well, I just want to throw this site out there and I say that I did this and I did this and I did this. Well, that doesn't necessarily mean you throw the baby out, which is the right of a municipality to exercise local zoning authority unless unless there is evidence that it went too far. But in this case, it did not. The statute doesn't say unless. Yeah. What is this? Yeah, the statute language. Bear with me. So the the TCA preserves local zoning authority with a limitation that it will not have the effect of prohibiting effective prohibit. And you're saying that the reason the reason your denial did not have the effect of prohibiting is because they could have gone to the DCNR and put up their monitor on state land. Well, first that they they didn't meet any of the standards for the grant of a variance. That's important. You can't throw that out. You can't eviscerate local zoning authority here. There is a context for the administration of local zoning. So you're saying local zoning can prohibit a cell tower even if there's no other place to put it? I thought that I thought we said that there are statutes. I'll be clear. There are circumstances in which a municipality will have not appropriately would have materially affected. So, for example, they don't allow for the uses at all. So they've excluded the use. Absolutely. It violates the provision. It violates the limitation. If someone were to apply for a variance and they'd be denied, even though they meet the standards, they have sufficient evidence of record to show that they meet that. Of course, those are those are those have nothing to do with the TCA. Those are just merits based. It must. It does have something to do with the TCA because it starts with we are preserving local zoning authority. And so other except to determine what that is. We have to look to what the frame the state the state framework is for that. This case, we've got a body of law, 100 years of jurisprudence on variance law in Pennsylvania and 50 years of the MPC that sets the enables the zoning hearing board to act only. And then you have a recent federal law that says you can't use your zoning to prevent. Prevent. So we think you're I just want to make sure I understand your argument. I understand your argument to be that. They weren't prevented from putting up a cell tower because they could have done it on forest land. Is that they were not prevented because the denial of variance didn't prevent them because they weren't entitled to the grant of the variance under Pennsylvania law and and they were not otherwise prevented from doing it because they had they put up as their justification a response by a state agency who is subject to the TCA, who said we have a moratorium which is expressly prescribed by the 2018 declaration. Thanks. We'll hear you on the phone. Thank you. You reserve time, correct? Yes. OK, Mr. Ruck. Good morning, your honors, and may it please the court. My name is Jimmy Ruck and I represent Selco Partnership doing businesses, Verizon Wireless. Before I offer up broader remarks, I want to just address the DCNR issue. Your honor, white your honors, White Deer did not preserve this argument below, as the district court noted on page 12 of its opinion, it expressly stated that White Deer did not raise that argument for this court. And when you look at the look at White Deer's reply brief, it doesn't point to a White Deer that actually wrestles with this argument that should end this inquiry under this court's precedent. If a party doesn't preserve its argument below, it's waived. Furthermore, I want to note that the standard that my colleague on the other side is requesting conflicts with this court's legal framework. So under this second prong, it requires the proprietor to have a good faith effort to identify and evaluate less intrusive alternatives to address the service gap. And in Sprint Spectrum, the court, this court explained that good faith effort doesn't require the provider to have the burden of proving that every potential alternative, no matter how speculative, is unavailable. If and if White Deer, sorry, if the DCNR's moratorium is overturned, it would actually be more intrusive on the state and local governments. It would require the state agency to engage in a case by case application in evaluating whether the application had the effect of prohibiting this test. And that's just that is not required under this court's precedent. Turn to the bigger picture, this case is on all fours with Sprint Spectrum. There, as here, the local zoning board didn't contest that there was a significant gap in calls that the proposed facility would fill. And there, as here, there was little dispute that the provider made a good faith effort to identify and evaluate less intrusive alternatives before selecting this site to fill that gap. That was enough to affirm in Sprint Spectrum, and it is for here too. White Deer's argument on appeal that his denial was based on a bona fide local zoning concern goes to a different argument that Verizon raised, but the district court didn't reach, namely that that the denial wasn't based on substantial evidence. But as this court has held in APT Pittsburgh and other cases, relying on a bona fide local zoning concern doesn't prevent express preemption, whereas here the denial. So you don't challenge there was a bona fide zoning concern. Your argument is preemption. You're right. Yes, Your Honor. The zoning board didn't do it. If there were no TCA, what the zoning board did was fine. You're right, Your Honor. The local zoning board could could act pursuant to its statutory authority granted by the state of Pennsylvania. It can act pursuant to this bona fide local zoning concern. But what my colleague on the other side's test is resulting is it nullifies the effect of prohibiting restriction. If any time a decision by a local zoning board was based on a bona fide local zoning concern, this would nullify and it would insulate its zoning decisions from the preemptive scope of the TCA. And this court has made clear, as has the Supreme Court in the city of Rancho of Congress, specifically enacted the TCA for a couple of reasons, first, to promote competition and higher quality in American telecom services and to encourage the rapid deployment. So the moratorium has been in place now for a generation, half a generation. Your Honor, so. It's just not it's not required under this under this court's well established precedent. Well, we didn't ask if it's required. We're asking why we. I mean, there's there's a lot of a lot of unobtrusive places to put these monopoles. We've got a lot of land in Pennsylvania. Why haven't you tried to do that? Why are you burdening? One thing that's interesting about Pennsylvania local government is there are a lot of really, really strong. Why are you burdening local governments rather than taking advantage of the vast expanse of state land? We are trying to take advantage of the vast expanse of state land. Your Honor, the record, what the record shows is that Verizon over time, so it's not just isolated to this incident, this specific case has repeatedly engaged with the state agency inquiring about the state moratorium and found that it was. You know, the moratorium remained in effect and Verizon's position was that it didn't at this court's legal, clearly articulated legal standard didn't require it to limit the launch. A whole nother lawsuit against the state agency challenging this moratorium. That sounds like you just feel like it's easier to fight with the small local governments than it is to fight with the state. Your Honor, respectfully, no, we the. Verizon made a exhaustive search and and in terms of identifying less intrusive alternatives, it came with all the proper evidence it didn't expect to have to get into a, you know, a legal ongoing legal battle with a local township. Your Honor, it came fully, fully resourced with all of the evidence for different experts testifying for the zoning board. And what did they testify to? It testified to a couple of different things. Your Honor, the two most important aspects were that that there is a significant gap in service. That's a given. Yep. And including that people can't make emergency 911 calls along this area and that and the other aspect was that that they put on evidence showing the exhaustive measures that Verizon had undertaken to to show that there was no other possible alternatives. This is a unique case. Your Honor, a lot of other cases, you've got maybe some other alternative locations. Verizon showed that it made a good faith effort. It went through multiple steps to identify not only whether or not its own existing towers and other locations could fill this coverage gap, which they weren't able to. It also looked for other zoning districts within the township and look to see if Verizon could build a facility there. Its experts showed that if Verizon were to build a facility in another zoning district, it wouldn't fill the substantial gap in service. Verizon also then conducted a meticulous search of other privately owned parcels of land and for a variety of reasons that are in the record, including that either the gaps in service wouldn't be filled as effectively or that there would be or that the private parcel of land would actually require greater variances. Verizon settled on this piece of land. And one thing that my colleague on the other side said was that suggested that was that Verizon could have bought this particular piece of land and that no zoning variances would have required. It's not in the record, Your Honor, but I do want to just make known that Verizon did have discussions with this particular landowner and the landowner did not want to give up this particular piece of land that had been in his family for years. And it's all it's my understanding that even if we had purchased, even if we had been able to purchase this land, it still would have required zoning variance. What if White Deer or any municipality said in their decision after request for a variance that, look, if you got a lease from DC, we would grant approval for the tower on that property. What if they specifically said that? Would that. Would the decision have the effect of prohibiting wireless service? So your question, Your Honor, is if Verizon had been able to successfully challenge the moratorium, now let's say this in their decision, they said, heck, if you came in here and asked for this tower on the DCNR property, we'd grant it to you. But if that was what was that, what if that was an effective decision? So, Your Honor, I think that we would have to look at the specific facts in terms of what the DCNR is requesting in terms of the lease terms, because, again, this court's standard and looking to you with FCC said in its 2018 ruling is whether or not the decisions materially inhibit the provider's provision of telecom services. So if I have to look at, you know, we have to look and see this court have to evaluate what the terms of that lease are and any restrictions or parameters on Verizon's ability to provide personal wireless services to fill to choose to adequately address that service gap. What does materially. Economic. Your Honor. The FCC has stated in its 2018 declaratory ruling that it's an easier standard to satisfy for the providers. It's this court's current standards more stringent in the in the FCC's 2018 ruling. It did look at the imposition of fees and in certain circumstances, the imposition of fees by local and state governments had the effect of prohibiting personal providing providing providers from providing personal wireless services in other areas. And so that in certain circumstances, Your Honor, the fee, the imposition of fees can actually have that materially inhibits standard. And this all goes back again to why Congress enacted the TC in the first place. It was look. My understanding of your position is you think you win even under the substantial gap. Are you also arguing that it's time to shift the standard from the declaratory order? So, Your Honor, for this specific case, no, you don't have to adopt a whole new test. We think just as the district court said, it's unnecessary to decide the facts of this case. We do think Verizon's position is that in a future case, if the applicable test is case determinative, then this court should follow the FCC's 2008 declaratory 2018 declaratory ruling. But that but again, that's not needed to decide this case. And I would just raise for the court's consideration. It's not needed because you win under the more strict, the tougher state, the tougher state. You're right, Your Honor. And I just the other other reason why what's motivating Verizon's position in this particular case is that it's been several years now where Verizon has been unable to build this tower, this facility, and there's a substantial gap in service. My co-counsel in this case is a Penn State football fan. And this past fall, he was driving to Happy Valley and right along this four mile stretch of I-80, his calls were dropping. It doesn't only impact these routine types of calls. Again, that's it. That's admitted. You know, there's a gap in service. Ms. Smith conceded that. So what's your position on Fairview Township? Your Honor, Fairview Township, just as the district court noted, it it purports to say that any time a local zoning authority acts pursuant to a bona fide local zoning concern, it should be you should avoid preemption. And that's just not what the TCA specifically states. The text, the clear text of the statute has that section, subsection B called limitations. And there's different substantive limitations that Congress has imposed on a state or local zoning authority, you know, traditional local zoning authority. And in this case, what's relevant is the effect of prohibiting personal wireless services. And so our position is that Fairview Township, first off, it's not it's not persuasive. And it just flat out got the legal standard incorrect, Your Honor. And there's no further questions at all. Thank you, Mr. Ryan. We'll hear rebuttal from Ms. Smith. A couple of items in response to your question. Why not just buy DCNR land? In fact, two more than two years before they came in for the application for variances for the same piece of property, and it went up on appeal to the Commonwealth Court or to the court. And the court said, you don't get the variances because you haven't met the standards. DCNR was on the table then, years ago. It's on the table still today. And if you were to look at the transcript, the board members asked Verizon, why aren't you pushing DCNR? Why aren't you looking at it? But I want to get back again to it's clear that the issue about DCNR was litigated in front of the Zoning Hearing Board. But I'm still having trouble seeing it, that it was argued in the district court. And I'm looking at your reply brief. Is there some page in the record where you can show us that the argument that this could have and should have been put on DCNR land was made in the district court? I don't have a page number to give to you, Your Honor. But it was certainly discussed. There was a settlement discussion before we even went into the litigation. And we, you know, the municipality put DCNR on the table repeatedly. You mean the settlement negotiation occurred before the district court case was filed? That's correct. Okay. But for purposes of preserving the argument before us, it had to have been, the issue had to have been joined. And the argument had to have been made in the district court. And I'm not, you're not able to cite anywhere where that was. I don't have a page number. I believe that we pointed out that the board properly did not violate the TCA. And the TCA being the section that includes the preservation and the limitation. And what's your view on Fairview? So Fairview Township was, actually, there were two decisions. That was the first of them. Both of them issued by now Pennsylvania Supreme Court Justice Robson. And what he was trying to address was how does the TCA fit with the structure of zoning law in Pennsylvania, particularly Barron's law. So it's particularly applicable here. And his conclusion was that we, there has to be meaning to the term preservation of local zoning. You can't just throw it out just because, just because somebody comes in and says, well, this is the property I want. This is the variance I want. So I, you know, and of course, it was binding law on the zoning hearing board. They were, that came after the 2008 declaration, the 2018 declaration. The judge spoke to both of those. And it's telling the world of municipalities, zoning hearing boards in Pennsylvania, you know, under this circumstance, you can't grant these variances. He said it was binding law with a level of certainty here. I'm not so sure it was binding law. If the TCA preempts, if the TCA preempts, the TCA has to be evaluated as to what its preemptive effect it may be on state law. So perhaps I've used the wrong term, but that was the last word from an appellate court in Pennsylvania with statewide authority. It was controlling law on the zoning hearing board when it handled this variance application. But like it or not, zoning hearing board in White Deer and all the zoning hearing boards across the commonwealth in the country need to comply with the TCA. And again, it would be a different story if this was the only site in a rural area that was available. No question. If they were to say no, they would be, they would be within that limitation. But that's not the facts of this case. Let's say that you're right and your friend is wrong and that the township should win under Pittsburgh APT. Then we consider the 2018 declaratory ruling. How does the board decision hold up under that standard? How does the board decision, the zoning hearing board decision under the 2018 standards is what you're asking? You know, material, again, I think you, the facts still are there. You still, you can't disregard the facts that there were, there are options. This wasn't the only option. And there's this language you were using good faith. I've seen that elsewhere. You know, there's no bad faith on the municipality's part, just to be clear. But good faith should mean that you've explored all of your options. I'm going to suggest this. There was no attempt to pursue an amendment to the zoning ordinance regulations for telecoms. There was no attempt to pursue an amendment to the zoning map in order to facilitate the placement of the tower. There was no, you know, there was nothing other than this variance that was applied for, for an already constrained lot. And so I will want to address the one last question or comment, which was the question of, you know, why hasn't Verizon pursued this at the state? I think we all know it's the political question. Verizon has lots of relationships with the state. Back in 1998, when telecommunications facilities were deregulated, that is the PUC jurisdiction over telecommunications was deregulated, you know, Verizon had to face a lot of push from the legislature to say, well, we still want you, Verizon, to do a lot of things for us, you know, and want you to provide services for low income people without cost. We want you to roll out broadband in more recent years. I mean, there's a lot of political questions on the table for Verizon at the state level. You know, do they think that this was the easier path and going and pushing a little harder at the state and maybe having to make some political deals for other things? Absolutely. They thought this was the easiest path. Thank you very much. Thank you. Also, Mr. Ruck will take the matter under advisement. Thank you.